**Eduardo VAZQUEZ RIVERA, Blanca Velilla Vazquez, and their community property society, Plaintiffs,**

v.

**EL DIA, INC., Defendant.**

**Civ. No. 84–1692 (JAF).**

United States District Court,
D. Puerto Rico.

Aug. 15, 1986.

José A. Gallart, Hato Rey, P.R., for plaintiffs.

Enrique Bray, Dominguez & Totti, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This suit was initiated by Eduardo Vázquez-Rivera, claiming that defendant El

Día, Inc. damaged his reputation by publishing in "El Nuevo Día", a newspaper of general circulation, that he had been criminally accused as a result of the large-scale embezzlement investigation at a local government agency. Mr. Vázquez-Rivera demands money compensation in the amount of $426,000, plus costs, expenses, and attorney's fees. Jurisdiction is claimed under 28 U.S.C. Sec. 1332. The parties are of diverse citizenship, the amount in controversy exceeding $10,000, exclusive of interest and costs. We find for defendant. No actionable wrong, i.e., libel and slander, was committed by defendant. Summary judgment shall be entered for said party. Fed.R.Civ.P. 56.

The facts are undisputed. Plaintiff Eduardo Vázquez-Rivera was appointed to occupy the position of Director of the Office of Internal Audits at a local governmental executive agency known as the Housing and Urban Renewal Corporation (known locally as CRUV). He commenced his functions as Director of Internal Audits on February 25, 1980. His appointment was made public by memorandum signed by the Executive Director of CRUV. The memorandum was distributed to the employees of the agency and to other agencies.[1] The duties assigned and required of plaintiff were the following: (a) advisor of the Secretary of CRUV and of all the high-ranking managerial employees of the Department. This function included all auditing phases that could generate changes in the public policy; (b) to plan, develop, and implement all activities of the instrumentalities which form part of the Agency; and (c) to act as a liaison agent between the Office of the Comptroller of Puerto Rico. *See* Appendix A to this opinion and order.

During plaintiff's incumbency in the position of Director of Internal Audits, rumors of fraud and misappropriations within different regional offices of CRUV spread, arousing the public's concern and interest regarding the performance of the agency.

As a result thereof, the Department of Justice of Puerto Rico initiated an investigation. Criminal charges were filed against the allegedly-corrupt officials. Plaintiff played an essential role in this investigation. He supervised the accounting aspect of the investigation and assisted the Department of Justice in performing the same. (See answer to interrogatory, question number 39, docket No. 31). As a result of the investigation, criminal charges were filed against employees and ex-employees of CRUV. In one of these cases, and the one relevant here, 176 charges were filed against five employees. Plaintiff was to serve as a prosecutorial witness.

At the time probable cause was determined, plaintiff was present. Defendant newspaper "El Nuevo Día" sent a reporter and a photographer to cover the probable cause hearing. While at the corridor of the local court, photographer Luis R. Ramos photographed persons who were related to the case. Plaintiff's photograph was taken. We now refer to the editing and screening process of defendant while preparing news for publication.

### Publishing Process

Defendant El Día, Inc. publishes two daily editions of one of the principal local newspapers, known as "El Nuevo Día". The "Metro" edition is sold in the San Juan metropolitan area. The other edition is sold in the remaining cities in Puerto Rico. This edition is known as the "Isla" edition. The regular publishing process was followed. The photographs taken and the proposed news article to be published were first approved by the Editorial Board. Afterwards, they were sent to the Layout Department, which was in charge of arranging the display of articles, photographs, and advertisements to fit the newspaper format. At "El Nuevo Día", the person in charge of this function was Mr. Sucre Vázquez, Chief of Layout.

The photos taken by photographer Ramos were given to Mr. Sucre on June 28,

---

1. The memorandum emphasizes the public importance of Vázquez' position. The same has been translated by the presiding judge from Spanish to English. *See* Appendix A to this opinion.

1983. As part of his functions of preparing the layout, he was at liberty to include any photographs. The information pertaining to the person in the photograph was written on the back of the photograph by the photographer. While assembling the layout for the coverage of the Department of Housing investigation, Sucre found plaintiff's photo within the group of photographs taken that day in court. He checked the back side of it and read plaintiff's name and position. He included plaintiff's photograph in the "Isla" edition with the caption "Eduardo Vázquez, Auditor of the CRUV, one of the persons against whom the District Attorney filed charges yesterday." The "Metro" edition contained the same article. However, plaintiff's photo did not appear. The "Metro" edition contained the photo of Héctor Malavé, auditing director of CRUV, who had been accused. Obviously a mistake was committed when the newspaper was printed. The "Metro" edition was correct. The "Isla" edition confused plaintiff Eduardo Vázquez with the former auditor Malavé, whose photo had also been taken. Both editions were published on June 29, 1983, being followed a year later by the present libel suit.[2] Defendant has moved for summary judgment alleging that plaintiff is a public official and that the standards of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), are not satisfied within the present frame of facts. Plaintiff opposes by negating the public official nature of his job. He denies being a public figure. In the alternative, he claims that the defendant acted with actual malice and reckless disregard for the truth by publishing plaintiff's photograph with a caption that corresponded to ex-director Héctor Malavé.

As stated by Mr. Sucre, he included the photo of plaintiff under the mistaken belief that he had been one of the charged CRUV employees. Sucre admitted that in the rush of tendering the layout, he took plaintiff's photograph, saw his name, noted that he was an employee of CRUV, and understood that he was one of the persons charged. There is no question that the published information regarding the caption under Eduardo Vázquez' photograph was false. However, the published article, both in the "Metro" and "Isla" editions, are correct. They mention Héctor Malavé as the former internal auditor that had been accused. We decide the various issues, to wit: (a) was plaintiff a public official, (b) if so, did defendant publish the newspaper article with actual malice or reckless disregard for the truth, (c) whether the summary judgment vehicle of Fed.R.Civ.P. 56 is appropriate in the instant case.

## Public Official Standard

■ The law of the land is to the effect that citizens should not be falsely or maliciously injured in their reputation. *See* N.L. Rosenberg, *Protecting the Best Men: An Interpretative History of the Law of Libel*, Univ. Of North Carolina Press, 1986 Ed. This legal concern is contained in Puerto Rico's Law of Libel and Defamation, reprinted at P.R. Laws Ann. tit. 32 secs. 3141–3149. The state laws must conform with the federal interest in this area of constitutionally-related activity in that the local jurisdictions cannot interfere with the rights guaranteed under the first amendment of the United States Constitution. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, — U.S. —, 105 S.Ct. 2939, 2945, 86 L.Ed.2d 593 (1985); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). Therefore, when applying the restrictions to the freedom of expression, the question whether a plaintiff falls within the category of public official is a matter to be decided under federal law. *New York Times Co. v. Sullivan*, 376 U.S. at 269, 84 S.Ct. at 720. The issue whether plaintiff is a public official is to be decided by the court as a matter of law. *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); *Rosenblatt v.*

---

2. We note that plaintiff never claimed the commission of an error from "El Nuevo Día". He did not seek any kind of apology or notice of correction. He took no action to alert the newspaper to the mistake committed.

*Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *Meiners v. Moriarity,* 563 F.2d 343 (7th Cir.1977).

The landmark case of *New York Times v. Sullivan,* 376 U.S. at 279, 84 S.Ct. at 725, held that a federal rule consonant with the Constitution should prohibit a public official from recovering damages for a defamatory falsehood relating to his public position. This restrictive standard is justified by the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open." *New York Times v. Sullivan,* 376 U.S. at 270, 84 S.Ct. at 721; *Philadelphia Newspaper, Inc. v. Hepps,* —— U.S. ——, 106 S.Ct. 1558, 1561, 89 L.Ed.2d 783 (1986) (freedom of expression requires breathing space). Under this label, the plaintiff must prove that the statement was made with actual malice, "that is, with knowledge that it was false or with reckless disregard of whether it was false or not." When the speech intended to be penalized is of public concern and the plaintiff is a public official or public figure, the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages from a media defendant. *See Consolidated Edison Co. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980).

The Supreme Court has declined to pronounce an all-encompassing definition of who constitutes a public official or to render a "formalistic test of how high up the ladder a particular government employee [must] stand" as to be subject to the public official scrutiny in libel actions. *See Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966). Therefore, a "minimum test requirement" was established:

> The public official designation applies *at the very least* to those among the hierarchy of government employees who *have* or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. (Emphasis added)

*Rosenblatt v. Baer,* 383 U.S. at 86, 86 S.Ct. at 676.

This "minimum test" standard recognizes that a public official's exposure in the community, the range of public debate, and interest could vary depending upon the type of position held by the plaintiff and the community composition and size. What would clearly be a public official in a small community would not be so in Washington, D.C.

Within the Puerto Rico community, plaintiff occupied a position in one of the most important executive agencies, known as the "Puerto Rico Housing and Urban Renewal Corporation." P.R. Laws Ann. tit. 17 secs. 21–26. This agency is empowered to:

> (a) study and evaluate the housing and urban renewal problems in the Commonwealth of Puerto Rico;
>
> (b) establish policies and programs in relation to housing problems in Puerto Rico;
>
> (c) to perform social, economic and technical research in the field of housing;
>
> (d) Long-term housing and urban renewal planning;
>
> (e) promotion of low-cost private house construction;
>
> (f) to contract for and enter into agreements necessary for the exercising of the powers granted under the law;
>
> (g) to accept, as aid for the fulfillment of its functions, contributions and gifts from the government of the United States.

This public corporation is managed by an Executive Director appointed by a Board of Directors (Board). P.R. Laws Ann. tit. 17 sec. 22. To this Executive Director and Board of Directors is to whom plaintiff responded as an advisor and auditor. Plaintiff had to supervise the auditing of the regional offices of CRUV, and of the monies which were necessary for the implementation of CRUV's goals. We do not see how, in a society where housing is recognized as a basic right, it can be argued that the person in charge of auditing the described programs related to housing and of specifically auditing the funds re-

quired to achieve them is not a person occupying a post "which invites the public scrutiny." Moreover, the undisputed facts show the importance of plaintiff's job as a vehicle for a cleaner, healthier public management. Plaintiff's supervision and investigation pinpointed the corrupt officials that were mismanaging public funds. We, therefore, hold that, within the context of the Puerto Rico community, plaintiff is a public official and, as such, must meet the standards of *New York Times v. Sullivan*. *See St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (where deputy sheriff was found to be a public official); *Arctic Co. v. Loudoun Times Mirror*, 624 F.2d 518 (4th Cir.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981) (where court noted that a consultant to a governmental entity could be a public official subject to the *Sullivan* test).

### Actual Malice or Reckless Disregard Standard

■ Even though federal constitutional law is the frame of reference, decisions by the Supreme Court of Puerto Rico in accord with federal precedent, are binding. Plaintiff's burden is to prove with *clear and convincing evidence* that defendant acted with actual malice or reckless disregard for the truth. *Zequeira Blanco v. El Mundo, Inc.*, 106 P.R.Dec. 432 (1977); *García Cruz v. El Mundo, Inc.*, 108 P.R. Dec. 174 (1978); *Martin Marietta Corp. v. Evening Star Newspaper*, 417 F.Supp. 947, 954 (D.D.C.1976). These labels have been substantiated with concrete meaning. It has been defined to mean that a defendant within a libel suit context published information damaging to the reputation of a plaintiff with actual knowledge that it was false or with reckless disregard of its truthfulness.

Attempting to define the "reckless disregard" standard, in *St. Amant v. Thomp-*

son, 390 U.S. at 730, 88 S.Ct. at 1325, the Court stated that:

[i]t is true, [that it] cannot be fully encompassed in one infallible definition. Inevitably, its outer limits will be marked out through case-by-case adjudication.

This case-by-case analysis is not without guidelines. The standard is to be applied by examining (a) the facts and circumstances surrounding the editorial process, *Herbert v. Lando*, 441 U.S. 153, 169, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115 (1979); and (b) the publisher's possible degree of awareness of the likelihood that he was printing false information. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094 (1967); *Garcia Cruz v. El Mundo, Inc.*, 108 P.R.Dec. 174, 180 (1978).

Reckless disregard must be found when there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.[3] *St. Amant v. Thompson*, 390 U.S. at 731, 88 S.Ct. at 1325. On the other hand, it is true that to configure malice, the "positive desire to injure or intention to injure ... or ill will are irrelevant." *See Meiners v. Moriarity*, 563 F.2d 343, 350 (7th Cir.1977) (recklessness consists not of mere negligence, and not of gross negligence, but of "publication with actual doubt as to the story's accuracy;" *see also*, *St. Amant v. Thompson*, 390 U.S. at 731–32, 88 S.Ct. at 1325–26). "Outrageous conduct does not necessarily connote subjective awareness of falsity." *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072, 1088 (3rd Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). The determination of whether a defendant "in fact entertained serious doubts as to the truth of the statement may be proved by inference." *Bose Corp. v. Consumer Union of United States, Inc.*, 692 F.2d 189, 196 (1st Cir.1982).

---

**3.** The concept of reckless disregard "is *not* the general tort concept but involves a substantial state of mind inquiry ... [as to show] that in fact [the reporter] entertained serious doubts as to the truth of the publication." (Emphasis added). *Tavoulareas v. Piro*, 763 F.2d 1472, 1474 (D.C.Cir.1985).

In order to penalize a publication, the courts must balance plaintiff's right against abusive and false interferences with his reputation and the freedom of expression guaranteed by our Constitution. The courts must allow for "breathing space" of this right. *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This, inevitably, will allow some error and misstatements, but "those who publish defamatory falsehoods with the requisite culpability" will be subject to liability. *Herbert v. Lando,* 441 U.S. at 172, 99 S.Ct. at 1646 (1979).

### Summary Judgment

The mechanism of summary judgment is an integral part of the constitutional protection available to a defendant in this type of action. *Clavell v. El Vocero,* 115 P.R. Dec. 685 (1984); *García Cruz v. El Mundo, Inc.,* 108 P.R.Dec. 1974 (1978); *Zequeira Blanco v. El Mundo, Inc.,* 106 P.R. Dec. 432 (1977); *Torres Silva v. El Mundo, Inc.,* 106 P.R.Dec. 415 (1977).

Plaintiff states that there exists substantial controversy of fact as to whether he is a public official. His argument is that it is a question to be decided by the jury. The argument made is not convincing. In *Rosenblatt v. Baer,* 383 U.S. at 88, 86 S.Ct. at 677, the Supreme Court recognized that said issue was to be decided by the trial judge, obviously by examining the factual scenario and the totality of circumstances surrounding plaintiff's position.[4] Whether or not Mr. Vázquez fulfilled all the functions that by law he is authorized and required to do will not render him less "public". More relevant to the issue of summary judgment is to find whether the "clear and convincing" evidentiary standard of actual malice exists. *See Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986).

**4.** Fed.R.Civ.P. 56 so requires. The reference material is before the court on the issues raised by the motion for summary judgment and opposition thereto.

**5.** We do see much of an argument when plaintiff calls our attention to the fact that the "Met-

Based on the applicable law referred to herein, it is clear that, when defendant's employee included plaintiff's photograph, he was convinced that plaintiff had been "the auditor" accused. (Deposition, docket No. 31). Furthermore, this case is distinguishable to all the case law examined, since in most of them, "libel" articles have been written with the potential plaintiff as the subject of the article, i.e., they usually were the articles' targets. Here, plaintiff was an involuntary, indirect target. He admits that he was only mentioned in the photograph's caption, while the newspaper had "published numerous articles regarding said scandal." (*See* Opposition to Motion for Summary Judgment, docket document No. 33, at 5). Defendant acted under the belief that Vázquez was Héctor Malavé, the former auditor that had been accused and whose picture was also taken at the local courthouse.[5] We find that the action taken by Mr. Sucre and, thus, by "El Nuevo Día", does not amount to the type of negligence and actual malice that would be actionable in this type of case. The imputed conduct does not meet the "clear and convincing standard" of the *New York Times v. Sullivan* case and its progeny.

Defendant's request for summary judgment is GRANTED. No costs or attorney's fees shall be imposed.

IT IS SO ORDERED.

### APPENDIX "A"

Commonwealth of Puerto Rico
DEPARTMENT OF HOUSING
606 Barbosa Avenue—Box W
Río Piedras, Puerto Rico 00928
February 22, 1980

### MEMORANDUM

TO        : See Distribution

ro" edition was correct. This, if at all, illustrates the point we have made. No actual malice is involved—we are facing an innocent, careless act prompted by the rush of press time. This is not actionable wrong under the context of the applicable legal standards.

FROM    : Jorge A. Pierluisi

SUBJECT : Appointment

I am enclosing a copy of the Administrative Order approved by the undersigned designating Mr. Eduardo Vázquez as Director of the Office of Internal Auditing of the Department of Housing, effective the 25th of February, 1980.

I reiterate in this communication the vital importance which the office referred to herein, as well as its management, has for this Department.

It is a matter of general knowledge to all of you that the Internal Auditor has the responsibility of advising the Secretary of Housing as a substitute of the Board of Directors of the Housing and Urban Renewal Corporation of Puerto Rico, as well as the high management of the Department, in all those important and sophisticated aspects of auditing which may generate changes in public policy, to guarantee a healthy and active management. In addition, he plans, develops, and implements all activities of the various instrumentalities that comprise the Agency.

1—Office of the Secretary and Auxiliary Secretaries

2—Housing and Urban Renewal Corporation of Puerto Rico

3—The Rural Housing Administration

4—Auxiliary Secretary's Office for Public Housing

5—Housing Bank

In addition, he acts as liaison officer between the Office of the Comptroller of Puerto Rico and this Department, in order that the Comptroller's auditors can obtain as soon as possible all the pertinent documentation and information needed for them to make the corresponding interventions.

For the reasons above mentioned, it is my firm conviction that the Office of Internal Auditing is the most important instrument that an agency head has to determine how faithfully administrative proceedings and regulations are being followed as it pertains to the agency, thus allowing the taking of immediate corrective action in those areas where established procedures have not been followed.

The appointment which I have made of Mr. Vázquez to direct the mentioned office has been motivated by the trust I have in his personal capacity and loyalty to principles that guarantee an excellent public administration for the wellbeing of Puerto Rico.

I am completely sure that he will find in our body of auditors composing said office a convenient working team with a strong group spirit whose main goals are those of carrying out work of optimum quality for the people to whom we serve.

My personal impression of the joint work conducted by the Internal Auditors of the Department is highly favorable and they have my absolute support as public career employees.

The recent problem which the Office of Internal Auditing of the Department faced because of a series of intervening adverse circumstances which motivated my loss of confidence in the management of the same does not affect the trust and autonomy which, in terms of internal interventions within the Department, I have guaranteed to the public officials composing the same so that they can perform their work adequately.

Notwithstanding, in harmony with the respect, ethics, and subtleties which should be maintained by said Office and its members, I wish that the same abstain from requesting documentation or intervening in the case regarding the alleged irregularities in the collection of extra hours during the David-Frederick emergency. Said case is under the consideration of the Honorable Secretary of Justice, Miguel Jiménez Muñoz, and public officials of the Bureau of Special Investigations, who are conducting in this Department a detailed and exhaustive investigation. Any documentation to that respect shall be requested directly by said public officials of the Bureau of Special Investigations from Mr. Vázquez, as Director of the Office, or from the Operational Directors or Auxiliary Secretaries concerned, who could be custodians of the documentation needed to give the Secre-

tary of Justice the pertinent elements of judgment needed for the establishment of responsibilities in relation to this case.

I am sure that the designated Internal Auditor will be able to concentrate the efforts and creative energy of employees such as those of Internal Auditing, who have demonstrated with devotion and enthusiasm that it is possible to bring about work of excellence in the field of auditing within the Agency.

\* \* \* \* \* \*

DISTRIBUTION

Secretary

Assistant Secretary

Chiefs of Operations

Auxiliary Secretaries

Offices Adscript to the Secretary

Associate Directors CRUV

Department Heads CRUV and AVR

Regional Directors of CRUV and AVR

Auditors Office of the Comptroller