**Elda VILLARREAL, Appellant,**

v.

**HARTE–HANKS COMMUNICATIONS, INC., et al., Appellees.**

**No. 13–89–197–CV.**

Court of Appeals of Texas, Corpus Christi.

March 8, 1990.

Rehearing Overruled April 19, 1990.

William J. Kolb, Corpus Christi, for appellant.

Jorge C. Rangel, Rangel & Chriss, Corpus Christi, Mike A. Hatchell, Ramey, Flock, Hutchins & Jeffus, Tyler, David H. Donaldson, Graves, Daugherty, Hearon & Moody, Austin, for appellees.

Before NYE, C.J., KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is a libel action. Appellant, Elda Villarreal, sued appellees, Harte–Hanks Communications, Inc., and Greg Fieg–Pizano, author of an article published on February 8, 1985 in the *Corpus Christi Times,* and several other entities. Appellant contended that this article dealing with her activities as a Child Protective Services (CPS) specialist with the Texas Department of Human Resources (TDHR) was libelous. The jury determined that the article was substantially false and was defamatory, but was not published with malice. The jury found damages in the amount of $160,-000.00. The trial court entered a take-nothing judgment favorable to appellees.

Plaintiff alleged that the newspaper article libeled her by stating in effect that she was not doing her job as a proper welfare agent. The portion of the allegedly libel-ous article that identifies appellant by name follows:

> Though police files dating to 1982 cite the 12–year–old as a shoplifter, runaway and curfew violator, welfare agent Elda Villarreal did not petition the court to remove the children until Jan. 25 [1985].

By point one, appellant complains that no evidence supports the trial court's submission of Special Question No. 7. This question asked the jury to determine whether on or before February 8, 1985, appellant was a "public official."[1] The jury answered that she was. By point two, appellant complains the trial court erred by overruling her motion to disregard unsupported and immaterial findings because "no evidence" supported the jury's answer to Question No. 7.

In considering "no evidence" and "insufficient evidence" points of error, we will follow the well-established test set forth in Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960). In deciding a no evidence point, we consider only the evidence and inferences which tends to support the jury's findings and disregard all evidence and inferences to the contrary. A "no evidence" point must be sustained if there is a complete absence of, or no more than a scintilla of evidence which supports the verdict. *McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W.2d 206, 207 (Tex.1985); *Old Republic Insurance Co. v. Diaz,* 750 S.W.2d 807, 809 (Tex.App.—El Paso 1988, writ denied).

The First Amendment to the United States Constitution is premised on the belief that free and open debate on public issues must be protected from government interference. The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing of political and social changes desired by the people." *Roth v. United States,* 354 U.S. 476, 484,

---

1. We have not been requested to determine whether the trial court erred by submitting this question on the ground that appellant's status as a "public official" is a legal question to be determined by the trial court. Generally, the trial judge has the duty in the first instance to determine whether the proof shows the allegedly libeled party to be a public official. *Rosenblatt v. Baer,* 383 U.S. 75, 88, 86 S.Ct. 669, 677,.15 L.Ed.2d 597 (1966); *Meiners v. Moriarty,* 563 F.2d 343, 350–51 (7th Cir.1977); *Vazquez Rivera v. El Dia, Inc.,* 641 F.Supp. 668, 670 (D.P.R. 1986). Appellant did not object to the submission of the special issue question on this basis.

77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). If these goals are to be achieved, protection of expression cannot be limited to what is true. "[E]rroneous statement is inevitable in free debate ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 271–72, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964) (quoting *N.A.A. C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)). Consequently, the United States Supreme Court has placed limitations on the award of damages in defamation actions.

One such limitation is the rule established in *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 725–26 that "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." The *New York Times* Court has indicated that a showing of actual malice requires that the public official provide "clear and convincing proof," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974), "that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

Two prerequisites must be met for the *New York Times* standard to apply. First, the plaintiff must be a public official for the purposes of the article, and second, the defamatory statements must relate to the plaintiff's official conduct. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 273–75, 91 S.Ct. 621, 626–27, 28 L.Ed.2d 35 (1971); *Garrison v. Louisiana*, 379 U.S. 64, 76–77, 85 S.Ct. 209, 216–17, 13 L.Ed.2d 125 (1964); *New York Times*, 376 U.S. at 283 n. 23, 84 S.Ct. at 728 n. 23.

In the instant case, the allegedly defamatory remarks relate to appellant's conduct while she was an employee with TDHR. Her status as a TDHR employee during the period discussed in the story is undisputed. Hence, the second prerequisite is satisfied.

Regarding the first prerequisite, we note that the *New York Times* Court had no occasion to determine how far down into the lower rank of government employees the "public official" designation would extend, and the Court did not specify categories of persons who would or would not be included. The respondent was an elected city commissioner and there was no question that he was a "public official." *New York Times*, 376 U.S. at 283, n. 23, 84 S.Ct. at 728 n. 23.

The United States Supreme Court has declined to pronounce an all-encompassing definition of who constitutes a public official or devise a formalistic test of how high on the ladder of public importance a particular government employee must stand in order to be subject to the public official scrutiny in libel actions. *Vazquez Rivera*, 641 F.Supp. at 671. In *Rosenblatt*, a minimum test requirement was established as follows:

> The public official designation applies *at the very least* to those among the hierarchy of government employees who *have, or appear to the public to have,* substantial responsibility for or control over the conduct of governmental affairs. (Emphasis added).

*Rosenblatt*, 383 U.S. at 85, 86 S.Ct. at 675. By way of elaboration on the "public official" definition, the Court stated:

> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards apply.

*Rosenblatt*, 383 U.S. at 86, 86 S.Ct. at 676. (Footnotes omitted). Moreover, the *Rosenblatt* Court stated that a public official's "position" must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the charges in

controversy. *Rosenblatt,* 383 U.S. at 86 n. 13, 86 S.Ct. at 676 n. 13.

While not every public employee is a public official, *Hutchison v. Proxmire,* 443 U.S. 111, 119 n. 8, 99 S.Ct. 2675, 2680 n. 8, 61 L.Ed.2d 411 (1979), the rule is not limited to the upper echelons of government. The scope of the public official rule extends "to anything which might touch on an official's fitness for office" including personal attributes such as "dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the individual's private character." *Garrison,* 379 U.S. at 77, 85 S.Ct. at 217.

The evidence shows that as a CPS specialist, appellant's primary duties consisted of investigating cases of alleged child abuse and neglect and providing services for the children involved. The incident that led to the article follows. On January 23, 1985, appellant became aware of a complaint concerning the alleged abuse and neglect of two children, N.G. and R.C. A supervisor requested appellant to conduct an investigation. Appellant initiated her investigation by interviewing school officials. She learned where R.C. and N.G. lived, and she informed the school officials that she would be "taking over" the investigation of the case. She told the school officials that if she had to remove the children, she would be in charge and would coordinate her actions with the school. She met with N.G. and with R.C.'s aunt. She told N.G. that by the following day, she and R.C. would be in foster care. Afterwards, appellant obtained approval from her supervisor to place the children in foster care.

The next day, appellant informed the police about the alleged abuse N.G. and R.C. had experienced, and she prepared and signed a petition for a suit affecting the parent-child relationship. She notified school officials that she would be taking R.C. and N.G. from school. She placed the children in foster care and prepared, with the assistance of the county attorney's office, a petition and affidavit in support of emergency orders. She had a judge review the paperwork and sign the orders. TDHR

now had temporary managing conservatorship of the children. Appellant also arranged for the children to see a doctor.

On January 26, appellant drafted a service plan for the parents which identified the problems that needed to be corrected before they could regain custody of N.G. and R.C. Appellant testified that she drafted a service plan with the intent that the parents would have a difficult time regaining custody of N.G. and R.C. She took N.G. to a therapist and accompanied the police while they interviewed N.G. concerning the alleged abuse. She met with the children's attorney *ad litem* and they visited the children at the foster homes. She also attempted to locate the children's parents. Appellant testified at the hearing which pertained to the placement of N.G. and R.C. On February 6, 1985, she assisted the police during their continuing investigation of the alleged abuse.

We conclude that to the people she dealt with, appellant had sufficient power to remove or cause children to be removed from their environment, place them in foster homes, and establish conditions governing the circumstances by which parents could regain custody of their children. Even though appellant may not have affected every citizen's life on a daily basis, she was engaged in a vital function of state government, i.e., the protection of its citizens. Appellant's activities had a significant impact on people's lives. Thus, she "appear[ed] to the public to have, substantial responsibilities for or control over the conduct of governmental affairs," and her responsibilities would reasonably lead the public to have an "independent interest" in her qualifications and performance "beyond the general public interest in the qualifications and performance of all government employees." *Rosenblatt,* 383 U.S. at 85–86, 86 S.Ct. at 675–76. Furthermore, we do not see how, in a society where child abuse is recognized as a burning issue, it can be argued that appellant is not a person occupying a post which invites the public scrutiny.

We, therefore, hold that the record before us shows that there is more than a

scintilla of evidence to support the jury's determination that appellant, as a CPS specialist, was a public official. As such, her status meets the standards set out in *New York Times v. Sullivan*. When submitting a case on special issues, questions raised by the pleadings and the evidence must be submitted to the jury. Tex.R.Civ.P. 278. Appellant's status as a public official was raised by the evidence and, absent a different objection to the special issue, the trial court did not err by submitting Special Question No. 7 to the jury.

Our holding is consistent with other rulings on this same subject in Texas and in other jurisdictions. In *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex. 1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977), an engineer brought a libel action against the *Laredo Times*, alleging that a story in the newspaper attributed to him responsibility for a severe flooding problem in a local subdivision and intimated that he was guilty of impropriety by serving as both the elected county surveyor and a paid engineering consultant to the county. *Foster*, 541 S.W.2d at 811. The Supreme Court held that the defendant's summary judgment proof failed to show that the allegedly libelous statement related to Foster's official conduct as an elected county surveyor and that the proof failed to establish that Foster's position as consulting engineer was sufficiently important to render him a public official under *Rosenblatt*. *Foster*, 541 S.W.2d at 813–14. In determining that Foster's position as a consultant did not render him a public official, the Supreme Court noted that the subdivision controversy focused on the county commissioners rather than on Foster as the consultant, *Foster*, 541 S.W.2d at 813, and "that Foster had little authority to exercise on behalf of the County." He also could not authorize expenditure of public funds and had very little public contact. *Foster*, 541 S.W.2d at 813–14.

In *Houston Chronicle Publishing Co. v. Stewart*, 668 S.W.2d 727, 729 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd), the appellate court held that a court reporter was not a "public official." The court stated that a court reporter does not possess the requisite "apparent importance" or "substantial responsibility for or control over the conduct of governmental affairs." *Stewart*, 668 S.W.2d at 729. *See also Guinn v. Texas Newspapers, Inc.*, 738 S.W.2d 303, 305 (Tex.App.—Houston [14th Dist.] 1987, writ denied) *cert. denied*, —— U.S. ——, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989) (holding that public official status does not include, as a matter of law, a person who was proven only to be an elected justice of the peace in his own community); *Durham v. Cannan Communications, Inc.*, 645 S.W.2d 845 (Tex.App.—Amarillo 1982, writ dism'd) (holding that an attorney, who was not a governmental officeholder at the time of the allegedly libelous broadcast and where the allegedly libelous broadcast did not discuss his previous performance as a special prosecutor, was not a public official); *Poe v. San Antonio Express–News Corp.*, 590 S.W.2d 537, 540 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.) (holding that a school teacher was not a public official).

Unlike the situation in *Foster*, appellant, by the nature of her duties, exercised authority on the State's behalf. She served as an investigator, she had authority to recommend whether children could be removed from their homes, she could physically remove children from their environments and place them in foster care, she could establish conditions governing the circumstances by which parents could regain custody of their children, and she provided services to abused and neglected children. She also had substantial public contact relating to her official duties. Appellant certainly had greater control over governmental affairs than a court reporter, school teacher, attorney or justice of the peace.

In *Press, Inc. v. Verran*, 569 S.W.2d 435 (Tenn.1978), a case factually similar to the case at bar, the Tennessee Supreme Court held a junior social worker with the Tennessee Department of Human Services to be a public official. *Verran*, 569 S.W.2d at 443. The court stated that:

Any position of employment that carries with it duties and responsibilities affecting the lives, liberty, money or property of a citizen or that may enhance or disrupt his enjoyment of life, his peace and tranquility, or that of his family, is a public office within the meaning of the constitutional privilege.

*Verran*, 569 S.W.2d at 441. Other cases (though by no means an exhaustive list) holding persons to be public officials who are in similar employment positions as appellant are: *Hodges v. Oklahoma Journal Publishing Co.*, 617 P.2d 191, 194–96 (Okla. 1980) (license tag agent); *Johnston v. Corinthian Television Corp.*, 583 P.2d 1101, 1103–04 (Okla.1978) (grade school wrestling coach); *Ryan v. Dionne*, 28 Conn.Supp. 35, 248 A.2d 583, 585 (1968) (collector of delinquent taxes). We overrule appellant's first and second points of error.

By points three, four, five and six, appellant argues that the trial court erred by either submitting Special Question No. 8, or by overruling her motion to disregard the jury's answer to Question No. 8. This question asked the jury if the subject article "was a fair, true and impartial account of the activities of the Texas Department of Human Resources, the Corpus Christi Police Department and the Nueces County District Attorney's Office?" By points of error seven and eight, appellant contends the trial court erred by disregarding the jury's findings to special question numbers 1, 2, 3, 4, 5A and 5C and entering judgment for appellees because these findings were material and supported by the evidence. Questions 1, 2, 3, and 4 deal with whether the subject article was defamatory or substantially false as it pertained to appellant. Questions 5A and 5C are damage issues. Our disposition of points one and two determine these points of error. Therefore, we need not answer these points.

The judgment of the trial court is AFFIRMED.

KENNEDY, Justice, concurring.

I concur with the result reached by the majority for the sole reason that, as pointed out in the majority opinion, appellant did not preserve for our review the question of law concerning appellant's status as a public official.