Ron ROGERS, Appellant,

v.

Janice A. CASSIDY, Appellee.

Janice A. CASSIDY, Appellant,

v.

Ron ROGERS, Appellee.

Nos. 13–96–464–CV, 13–96–555–CV.

Court of Appeals of Texas,
Corpus Christi.

April 24, 1997.

Raymond L. Gill, San Juan, for Appellant in No. 13–96–00464–CV.

Janice A. Cassidy, San Benito, for Appellant in No. 13–96–00555–CV.

Janice A. Cassidy, San Benito, for Appellee in No. 13–96–00464–CV.

Raymond L. Gill, San Juan, for Appellee in No. 13–96–00555–CV.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Janice A. Cassidy, City Attorney for the City of San Benito, sued Ron Rogers, a private citizen, alleging Rogers defamed her and caused her emotional distress by publishing letters that falsely accused her of "improper involvement in the 1995 San Benito City elections." Cassidy moved for summary judgment; Rogers also moved for summary judgment claiming Cassidy's cause of action is negated as a matter of law. The trial court denied both motions and each party filed interlocutory appeals under section 51.014(6) of the Texas Civil Practice &

Remedies Code. We dismiss Cassidy's appeal for lack of jurisdiction; we reverse and render on Rogers' appeal.

## BACKGROUND

Between February 1992 and July 1995, Janice A. Cassidy served as City Attorney for San Benito ("the City") on a retainer basis.[1] Rogers was a private citizen with interests in promoting public access cable television. Rogers appeared on several occasions before the City Commission where Cassidy served as City Attorney and Cassidy's husband advised the City Commission as an accountant.

Rogers alleges that as election day approached in the spring of 1995, he "had reason to believe, and did believe, in good faith, that ... [Cassidy] was inappropriately involved, as City Attorney, in the 1995 San Benito city elections." Specifically, he perceived that she had acted inappropriately by allowing two candidates running under the "Leadership '95" slate to use her law offices as their campaign headquarters. Rogers wrote a letter to the Cameron County Elections Administrator stating that he felt Cassidy had engaged in conduct which "would be considered unethical and could possibly violate ... the Penal Code." The letter concluded that, "As a public servant of our city, she has no business involved in any shape or form with local politics." The Elections Administrator directed Rogers to the Cameron County District Attorney. Rogers wrote to the District Attorney requesting that Cassidy's involvement in the elections be investigated.

The two letters contained the following allegedly libelous statements:

(to the Elections Administrator)

A. "I would like to ask your assistance in looking into some campaign irregularities in our local elections.... I feel that there have been some laws violated involving the conduct of some of our local officials."

B. "The Leadership '95 campaign ticket ... have [sic] used as their [sic] campaign headquarters the offices and fa-

cilities of our City Attorney, Ms. Jan Cassidy. The Texas Penal Code ... clearly outline[s] that this manner of behavior by a public servant is in fact illegal and contrary to these statutes. Further, this type of action would be considered unethical and could possibly violate sections of Chapter 39 of the Penal Code also."

C. "Ms. Cassidy is a public servant ... and derives substantial income from duties as City Attorney. As a public servant of our City, she has no business involved in any shape or form with local politics and I would like your office to fully investigate these very troubling circumstances."

(to the District Attorney)

D. "I am including the statutes that I speak of in my original letter to the County Elections Administrator. I feel the documents speak for themselves. There are certainly enough questions to warrant an investigation into these individuals and their conduct."

E. "Ms. Cassidy is a public servant that is involved in the campaign of 2 candidates for City Council. She presides at all City Commission meetings and all other City meetings as legal counsel for the City of San Benito. To me, I see this crystal clear as being contrary to the section of the law that I previously quoted."

Spurred by Rogers' allegations, two local newspapers, the *San Benito News* and the *Valley Morning Star*, published articles in which statement "C" (above) was quoted. Cassidy's suit alleging defamation, libel per se, and intentional infliction of emotional distress soon followed.

## JURISDICTION

■ Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (org. proceeding);

---

1. Cassidy also maintained her private practice concurrent with her duties as City Attorney.

*North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966).

Both parties contend that this court has jurisdiction over their interlocutory appeals pursuant to section 51.014(6) of the Texas Civil Practice and Remedies Code. That section specifically allows appeal of an interlocutory order that

> denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article 1, Section 8, of the Texas Constitution.

TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(6) (Vernon Supp.1995).

■ Rogers' defense is that the actions against him are not actionable because (1) he was simply exercising his right as a private citizen to question the actions of a public official; (2) he was engaging in constitutionally protected political speech; (3) his statements were matters of opinion, and therefore, constitutionally protected; (4) his statements were true; and (5) he was acting in good faith and without malice. As such, we hold that Rogers' defense arises under the free speech or free press clause of the First Amendment to the United States Constitution, or Article 1, Section 8, of the Texas Constitution, and is therefore within our jurisdiction to consider by interlocutory appeal.[2] TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(6) (Vernon Supp.1995).

■ We next consider jurisdiction over Cassidy's appeal. Cassidy contends that section 51.014(6) provides jurisdiction over her defamation and infliction of emotional distress claims but fails to explain her reasoning. Cassidy's reliance on the statute, however, suggests that she believes jurisdiction exists because her claim is against a person whose communication was published by the

print media. That is, Cassidy argues that a plaintiff denied summary judgment in a defamation suit against a member of the media or a person whose communication appeared in the media, can appeal the denial of summary judgment by interlocutory appeal. While that is indeed an avenue of interpretation, the legislative history of the statute reveals that Section 51.014(6) is not intended to inure to the benefit of a plaintiff who claims to have been libeled or slandered by the media. The purpose of the section is "to allow a newspaper, radio station or television station that was sued for libel to make an immediate appeal of a judge's refusal to grant a summary judgment." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. S.B. 76, 73rd Leg., R.S. (41). "[Section 51.014(6)] permit[s] the courts to sort out unmeritorious libel cases *before* a case enters the time-consuming and expensive trial phase." *Id.*

Because Section 51.014(6) does not provide jurisdiction over Cassidy's interlocutory appeal, we dismiss cause number 13–96–555–CV. We proceed with consideration of Rogers' appeal.

## STANDARD OF REVIEW

When an appellate court reviews a trial court's denial of summary judgment, it applies the standards mandated by the Texas Supreme Court. They are:

> 1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.
>
> 2. In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the non-movant.
>
> 3. We indulge in every reasonable inference and resolve any doubts in the non-movant's favor.

*See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show that the plaintiff has no cause of action. A defendant may meet this burden

---

2. While section 51.014(6) only permits interlocutory appeals in cases where the communication in question appeared in or was published by the electronic or print media, we can also consider

Rogers' letters to the District Attorney and Election Official because the excerpts complained of in those letters were published by the two newspapers.

by either 1) disproving at least one essential element of each theory of recovery, or 2) conclusively proving all elements of an affirmative defense. *Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex.App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994). If the movant's motion and summary judgment proof facially establishes his right to judgment as a matter of law, then the burden shifts to the non-movant to raise fact issues precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

## DISCUSSION

■ Although Cassidy's petition refers to Rogers' letters as "illegal, slanderous, malicious and intentional acts," her complaints only arise from statements written about her. Therefore, she has actually alleged libel and not slander.[3] Accordingly, Rogers' motion for summary judgment contends, as an affirmative defense, that his remarks comport with the requirements of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Casso v. Brand*, 776 S.W.2d 551 (Tex.1989), and are thus not actionable.

■ The *New York Times* case established a rule that "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280, 84 S.Ct. at 726. Two prerequisites must be met for the *New York Times* standard to apply. First, the plaintiff must be a public official for the purposes of the published statement, and second, the defamatory statements must relate to the plaintiff's official conduct. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 273–75, 91 S.Ct. 621, 626–27, 28 L.Ed.2d 35 (1971); *Garrison v. Louisiana*, 379 U.S. 64, 76–77, 85 S.Ct. 209, 216–17, 13 L.Ed.2d 125 (1964); *New York Times*, 376

U.S. at 283 n. 23, 84 S.Ct. at 727 n. 23; *Villarreal v. Harte–Hanks Communications, Inc.*, 787 S.W.2d 131, 133 (Tex.App.—Corpus Christi 1990), *cert. denied*, 499 U.S. 923, 111 S.Ct. 1316, 113 L.Ed.2d 249 (1991).

In considering Cassidy's status as a public official, we note that the *New York Times* Court had no occasion to determine how far down into the lower ranks of government employees the "public official" designation would extend, and the Court did not specify categories of persons who would or would not be included. *Harte–Hanks*, 787 S.W.2d at 133. The respondent in *New York Times* was an elected city commissioner and there was no question that he was a "public official." *Id.* (citing *New York Times*, 376 U.S. at 283, n. 23, 84 S.Ct. at 727, n. 23.)

Since *New York Times*, the Supreme Court has declined to pronounce an all-encompassing definition of who constitutes a public official or devise a formalistic test of how high on the ladder of public importance a particular government employee must stand in order to be subject to the public official scrutiny in libel actions. *Harte–Hanks*, 787 S.W.2d at 133. In *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), however, the Court established the following minimum test requirement:

> The public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.
>
> . . . .
>
> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and *the New York Times* malice standards apply.

---

3. Slander is an orally communicated or published defamatory statement made to a third person, without legal excuse, which is either defamatory in itself or defamatory because it results in actual damages. *Glenn v. Gidel*, 496 S.W.2d 692, 697

(Tex.Civ.App.—Amarillo 1973, no writ). Although Rogers made some oral statements about Cassidy to the newspapers, Cassidy's petition does not complain about these statements.

*Id.* at 85–86, 86 S.Ct. at 676 (Footnotes omitted). Moreover, the *Rosenblatt* Court stated that a public official's "position" must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the charges in controversy. *Id.* at 86 n. 13, 86 S.Ct. at 676 n. 13.

 While not every public employee is a public official, the rule is not limited to the upper echelons of government. *Harte–Hanks*, 787 S.W.2d at 134. The scope of the public official rule extends "to anything which might touch on an official's fitness for office" including personal attributes such as "dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the individual's private character." *Id.* (citing *Garrison*, 379 U.S. at 77, 85 S.Ct. at 217).

 Here, the evidence shows that while Cassidy was not hired for a term of employment, she was nevertheless on retainer by the City to serve as City Attorney, which is a position outlined by the City Charter as a "city officer." In that capacity, Cassidy was paid the sum of $1,200 per month for attendance at up to six monthly meetings of the City Commissioners and Civil Service Commission, $85.00 per hour for drafting and filing legal documents, and $100 per hour for litigating matters on behalf of the City. Further, Cassidy's name and title as "City Attorney" appear on the official recorded minutes of the Commission's regular meetings just above the names of the City Manager and City Secretary. While acting as City Attorney she had contact with the public by way of (1) attending the public meetings and participating in her capacity as City Attorney, (2) sending notices of court hearings to citizens; and (3) contacting entities such as courts of appeals and the Justice Department as representative of the City.

 We conclude that Cassidy's standing in San Benito's government was one which invited public scrutiny and discussion. Her position as "the City Attorney" also made it appear to the public that she possessed substantial responsibility for or control over the conduct of governmental affairs such that the public had an independent interest in her qualifications and performance. We hold, therefore, that Cassidy was a public official. We further hold that Rogers' comments, which address perceived improprieties in the City Attorney's behavior as it related to the city elections, sufficiently related to Cassidy's conduct, and ongoing fitness for office as a public official.

Having determined that the prerequisites of *New York Times* have been met, we next consider whether Cassidy proved that the statements were made with actual malice. *See Casso*, 776 S.W.2d at 554.

 Actual malice is not ill will; it is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 328, 94 S.Ct. 2997, 3001, 41 L.Ed.2d 789 (1974). To prove "reckless disregard," the plaintiff must prove that the defendant possessed a high degree of awareness of probable falsity. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex.1989).

 As summary judgment proof that he did not act with actual malice, Rogers offered his affidavit, which describes the circumstances leading up to the publication of his statements. The affidavit reads, in relevant part, as follows:

I became aware of what, in my opinion, were irregularities in the 1995 City of San Benito election when I read an article in the April 9, 1995 San Benito News. I was troubled because I learned from the newspaper article the mailing address, the fax number, and possibly the regular telephone number of Leadership '95 were the same as those of Janice Cassidy's attorney office at 550 N. Sam Houston, San Benito. In April and May, 1995, Janice Cassidy was City Attorney for the City of San Benito.... It was known in San Benito that Janice Cassidy conducted official San Benito City Attorney business in April and May, 1995, from her office at 550 N. Sam Houston. The Leadership '95 office was located at 550 N. Sam Houston in April and May 1995. I was concerned by what was, in my opinion, a perception of impro-

priety raised by the facts I have stated. Because of this perception of impropriety, I looked up Texas election law to see whether any possibility existed that a law or laws had been broken. I was concerned that Section 36.03 and Chapter 39 of the Texas Elections Code may have been violated by the activities of San Benito City Attorney Janice Cassidy. I investigated these matters by contacting media representatives, attending San Benito City Commission and other official meetings, calling San Benito city election candidates, and inquiring among San Benito residents.... I contacted the Texas Elections Commission [and] ... the Texas Ethics Commission to ascertain the propriety of this matters.... Based on my investigation, it was my opinion that serious questions had been raised.... Consequently, I wrote [the letters].

Rogers then discussed his beliefs about the veracity of his statements:

I took these actions in the good faith belief that, as a citizen, I owed a duty to have this investigated, to inform San Benito residents about this, and to do what I could to assure fair and open elections in San Benito. I bore no ill will or malice toward Janice Cassidy, neither in her official capacity as San Benito City Attorney, nor in her private life. Everything I wrote and everything I said in this regard was either my well-founded opinion or was what I believed in good faith to be true, and was fully justified by what I knew at the time.... I had no doubt that the statements I made were true, substantiated, justified, and necessary. I did not believe that any of the statements I made were false. I did not act with reckless disregard as to the truth or falsity of the statements I made.

We find Rogers' affidavit sufficient to negate actual malice. *See Casso,* 776 S.W.2d at 559; *Gillum v. Republic Health Corp.,* 778

S.W.2d 558, 572 (Tex.App.—Dallas 1989, no writ)(defendant can prove the absence of malice by showing that the speaker never entertained serious doubts as to the truth of his statements). Rogers was therefore entitled to summary judgment unless Cassidy countered with clear and convincing proof that Rogers' statements were, in fact, made with actual malice.[4] *See Casso,* 776 S.W.2d at 559; *Howell v. Hecht,* 821 S.W.2d 627, 631 (Tex.App.—Dallas 1991, writ denied).

 Cassidy concedes that, under different circumstances, she would be required to counter with clear and convincing proof of actual malice. She contends however that in the present circumstances malice is presumed because Rogers accused her of committing a crime. As authority, she cites case law holding that "charging one falsely with the commission of any crime for which he may be punished by imprisonment is libel per se." *Christy v. Stauffer Publications, Inc.,* 437 S.W.2d 814, 815 (Tex.1969); *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 630 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)(such written or printed words are held to be so obviously hurtful to the person aggrieved that they require no proof of their injurious character to make them actionable). Cassidy further argues that where the words are libelous per se, malice is presumed. *Goree v. Carnes,* 625 S.W.2d 380, 385 (Tex. App.—San Antonio 1981, no writ) (citing *Houston Belt & Terminal Railway Co. v. Wherry,* 548 S.W.2d 743 (Tex.Civ.App.— Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied,* 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977)). We concur with Cassidy's statements of the law, however, we disagree with her deduction for two reasons.

 First, Rogers asserted and proved a qualified privilege to make his statements. This court held in *Associated Tel. Directory Publishers, Inc. v. Better Business Bureau of Austin, Inc.,* 710 S.W.2d

---

**4.** According to the *Casso* court, the purpose for permitting a defamation defendant to submit what appears to be a self-serving affidavit and for further requiring the defamed plaintiff to counter with clear and convincing evidence is that "[w]hile it is conceivable that a defendant's trial testimony, under the rigors of cross-examination, could provide that requisite proof [of actual malice], it is more likely that plaintiff will have to secure that evidence elsewhere. If he cannot secure it during the discovery process, he is unlikely to stumble on to it at trial." *Casso,* 776 S.W.2d at 559.

190, 191 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) that:

> [A] qualified privilege occurs where the social policy considerations (public policy and interest) are of relatively less weight so that inquiry into the motive and reasonableness behind the statement is permitted. Such communications are privileged when made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty.

*Id.* (quoting *Zarate v. Cortinas,* 553 S.W.2d 652 (Tex.Civ.App.—Corpus Christi 1977, no writ)). When a communication of an alleged wrongful act is made to an official authorized to protect the public from such act, that communication is entitled to a qualified privilege. *Darrah v. Hinds,* 720 S.W.2d 689, 691 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). In the context of a summary judgment, when circumstances creating a qualified privilege exist, the movant for summary judgment has the burden of proving the existence of the qualified privilege and proving the absence of malice. *Beaumont Enter. & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex. 1985); *Hardwick v. Houston Lighting and Power Co.,* 881 S.W.2d 195, 199 (Tex.App.—Corpus Christi 1994, writ dism'd w.o.j.).

In his affidavit, Rogers stated:

> During all of 1995 and continuing to the present, I have been a private citizen who is interested in San Benito city elections and the conduct of San Benito city business. I was, and am, very concerned that San Benito city elections be fair, open, and lawful. As such, I follow San Benito city elections and City of San Benito official business very closely, attend certain San Benito City Commission meetings, and exercise my constitutional rights to assure that democracy prevails in the City of San Benito.... Based on my investigation, it was my opinion that serious questions had been raised about the 1995 San Benito City elections, Leadership '95, Janice Cassidy's husband, and City Attorney Janice Cassidy. I believed it was my duty as a private citizen and voter of San Benito to raise this issue to public scrutiny, by notifying appropriate officials and others that these perceived irregularities had occurred.... I took these actions in the good faith belief that, as a citizen, I owed a duty to have this investigated, to inform San Benito residents about this, and to do what I could to assure fair and open elections in San Benito.

We find the affidavit sufficient to establish his qualified privilege. *See Casso,* 776 S.W.2d at 559.

Second, the law states that libel per se lies where one is falsely charged with a crime. The mere implication of a crime does not automatically render the statement libel per se; there must be a showing that the charge was false.

Cassidy's summary judgment proof fails to verify that Rogers' charges were actually false. What we do have is a statement by the District Attorney that complaints such as Rogers' merit attention, and a statement by a San Benito Commissioner that he voted to terminate Cassidy because of her improper involvement in the 1995 city elections. While these statements certainly do not confirm any illegality, Cassidy failed to provide the trial court with proof that Rogers knowingly made a false charge of criminal activity.

Because Rogers' statements were not libelous per se, Cassidy retained the burden of proving actual malice, in accordance with *New York Times* and *Casso.*[5]

As "proof" of actual malice, Cassidy submitted Rogers' deposition which established that

1) He had not actually seen her in illegal campaign activity.

2) He could not name other persons who were similarly concerned with Cassidy's activity.

---

5. Cassidy's petition asserted two defamation claims: one for libel per se stemming from the accusation of criminal wrongdoing, and the other for the damage to her reputation from Rogers' alleged libelous statements. Rogers was required to negate both claims. Nevertheless, Rogers' negation of libel per se serves two purposes; it disposes of Cassidy's libel per se claim, and it repudiates Cassidy's claim that actual malice is presumed.

3) He was aware that her reputation as City attorney would be harmed.

4) He was aware that, if his statements were true, she might be subject to criminal prosecution, termination from her job as City Attorney, and disbarment.

5) When he stated to the newspapers (orally) that Cassidy's telephone number appeared on Leadership '95 materials, he did not even know Plaintiff's telephone number.

We find this evidence insufficient to prove actual malice. Although Cassidy has shown that Rogers did not actually catch her in the act of illegal campaigning, Rogers did not state that he had. Also, while Rogers may have been aware of the potential consequences of his allegations, he merely pointed out the appearance of impropriety, given her position as a public official, and asked for an investigation. He stated that he "bore no ill will or malice toward Janice Cassidy, neither in her official capacity as San Benito City Attorney, nor in her private life." Finally, while he may have misstated his understanding of shared telephone numbers, Cassidy and Leadership '95 nevertheless shared the same fax line.

In conclusion, having determined that (1) Cassidy was a public official, (2) Rogers' statements pertained to Cassidy in her capacity as a public official, (3) Rogers' allegation of a crime was not libel per se, (4) Rogers properly met his summary judgment burden, and (5) Cassidy failed to present clear and convincing proof of actual malice, we hold that the trial court erred in failing to grant summary judgment for Rogers.

Our disposition on Cassidy's defamation claim precludes any recovery on her claim for intentional infliction of emotional distress.

Rogers' first point of error is sustained.

### ATTORNEY'S FEES

By his second point of error, Rogers contends that the trial court erred in failing to award him attorney's fees, and asks us to rely on "fundamental fairness [and] ... equity powers to award attorney's fees."

■ Attorney's fees are not recoverable in tort actions. *Knebel v. Capital Nat'l*

*Bank,* 518 S.W.2d 795, 803–804 (Tex.1974). Furthermore, the general rule is that expenses incurred in defending a suit are not recoverable as costs or damages unless recovery for such items is expressly provided for by statute or is recoverable under equitable principles. *Hammonds v. Hammonds,* 158 Tex. 516, 313 S.W.2d 603, 605 (1958). In this case, section 51.015 of the Texas Civil Practice & Remedies Code specifically provides:

In the case of an appeal brought pursuant to Section 51.014(6), if the order appealed from is affirmed, the court of appeals shall order the appellant to pay all costs and reasonable attorney fees of the appeal; otherwise, each party shall be liable for and taxed its own costs of the appeal.

Tex.Civ.Prac. & Rem.Code Ann. § 51.015 (Vernon Supp.1997). Thus, Rogers is not entitled to attorneys fees for the trial or the appeal, and we decline to award them equitably on appeal. We overrule Rogers' second point of error.

We DISMISS cause # 13–96–555–CV for lack of jurisdiction, and REVERSE the trial court's denial of summary judgment in cause # 13–96–464–CV and RENDER that Cassidy take nothing against Rogers.