

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

———————————————

No. 07-12-00527-CV

———————————————

DARRIN OPAITZ, APPELLANT

V.

GANNAWAY WEB HOLDINGS, LLC, D/B/A WORLDNOW,
RAYCOM MEDIA, INC. D/B/A KCBD-TV NEWSCHANNEL 11
AND JAMES CLARK, INDIVIDUALLY, APPELLEES

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2011-556,884-A; Honorable Les Hatch, Presiding

November 18, 2014

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Darrin Opaitz, challenges the trial court's order granting summary judgment in favor of media Appellees, Gannaway Web Holdings, LLC, d/b/a Worldnow, Raycom Media, Inc., d/b/a KCBD-TV NewsChannel 11 and James Clark, individually, (collectively KCBD) in his suit for invasion of privacy, defamation by libel, defamation by libel *per quod* and declaratory judgment.

BACKGROUND

Opaitz, a police officer with the City of Lubbock for over seventeen years, was placed on paid administrative leave on March 5, 2009, amid allegations of sexual misconduct and an internal affairs investigation.[1] Beginning in April 2009 and ending on May 27, 2010, James Clark, KCBD's executive producer, pursued the story through a series of five website articles. Opaitz alleged KCBD's conduct ruined his reputation, forcing him to retire early and move to New Mexico. In April 2011, Opaitz sued KCBD for defamation based on these articles. KCBD moved to dismiss the claims based on the first four website articles on the basis that those claims were barred by limitations. The trial court granted the motion to dismiss and the case proceeded on the only remaining claim based on the website article dated May 27, 2010, hereinafter referred to as the prosecution statement. That article, in its entirety, provided as follows:

**After Investigation, paid leave, Opaitz not with Lubbock Police**

The Lubbock police officer who was investigated last year by Texas Rangers has retired.

Darrin Opaitz was accused of sexual assault, and while the Texas Rangers took witness statements, no charges have been filed. KCBD NewsChannel 11 noticed that it was more than a year that Opaitz was placed on paid leave. So, on Thursday we did a little checking, and here's what we found.

Police say Opaitz retired from the department on January 29, 2010. He had been on leave starting May 5th 2009 so that means he was on paid leave for about nine months.

The local office of District Attorney handed off the Texas Rangers case to the Texas Attorney General's Office to act as a special prosecutor.

---

[1] In his deposition, Opaitz first testified he was never given a reason for being placed on administrative leave but later testified he was disciplined for texting on duty.

After a period of discovery, KCBD moved for summary judgment on traditional and no-evidence grounds. The hybrid motion was supported by deposition excerpts from Opaitz and Clark and other documentation. Opaitz filed written opposition to KCBD's motion supported by deposition excerpts, his own affidavit and other documentation. After a hearing, the trial court granted summary judgment in favor of KCBD, without specifying a ground. The trial court's order granting summary judgment also severed Opaitz's claims against two other media defendants, Walker Broadcasting & Communications, Ltd. d/b/a/ NEWSRADIO [1420] and Denny Chad Rosson, from those claims being asserted against KCBD.

By one issue, Opaitz challenges all grounds in support of the trial court's summary judgment. He also presents eight sub-points in which he (1) contends the summary judgment evidence raised fact issues on every material and necessary element of his claims and negated any justification, privilege or affirmative defense; the trial court erred in (2) understanding its role to hold KCBD to a proper burden of proof on its affirmative defenses, (3) finding him to be a public official because the allegations were made in a non-public investigation and did not result in an arrest or criminal charges being filed against him, (4) finding the May 27, 2010 story was privileged as a matter of law because the investigation into Opaitz's off-duty conduct did not arise out of the performance of his duties as a police officer and could not be a matter of public concern, (5) finding the May 27, 2010 story that referenced the Texas Rangers' report was privileged as a matter of law and (6) granting summary judgment and denying his claim for declaratory relief because it weighed the evidence which invaded the province of the jury. By sub-point (7), Opaitz asserts the trial court's summary judgment is not

3

final because it creates irreconcilable conflicts between him and the remaining defendants, and by his final sub-point (8), he maintains the trial court erred in not ruling on his objection to KCBD's factual contentions contained in his last live pleading.

Among other contentions, KCBD contends (1) Opaitz improperly assigned error, (2) there was no evidence of actual malice and (3) the judgment does not grant more relief than requested. By reply brief, Opaitz responds to KCBD's arguments and reiterates his position that material fact issues exist which require reversal of the trial court's summary judgment. Opaitz also answers KCBD's argument that his appellate issue is multifarious and does not properly assign error on appeal by contending the trial court's judgment did not specify the basis of its ruling.[2] We affirm the trial court's order that Opaitz take nothing on his claims against KCBD.

## FINALITY OF SUMMARY JUDGMENT

In analyzing Opaitz's issues, we do so in a logical rather than sequential order. Initially, we address Opaitz's seventh sub-point by which he questions the finality of the summary judgment. He argues the trial court's severance for purposes of this appeal created a defect in parties in his claim for declaratory judgment. He contends the declaratory judgment action cannot be tried as to the remaining defendants. We disagree.

After the trial court granted summary judgment, Opaitz and the remaining defendants filed a motion to abate the proceedings below pending the outcome of this

---

[2] *See Malooly Bros.*, *Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (allowing a broad point of error or issue to preserve all potential challenges to a summary judgment).

appeal. The trial court granted the motion and ordered a stay of all discovery, pretrial deadlines and trial proceedings "until the appeal of Court's Summary Judgment signed on August 30, 2012, is final or until a party to the case moves the Court to reinstate or dismiss the action . . . ." Opaitz concedes in his brief that the trial court properly granted the abatement order to permit this appeal to proceed. Moreover, the trial court's summary judgment is final for purposes of appeal based on severance of the remaining parties and claims. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Consequently, sub-point seven is overruled.

## FAILURE TO ADDRESS ADDITIONAL CLAIMS

By his eighth sub-point, Opaitz contends the summary judgment requires reversal because it grants KCBD more relief than requested, in that it grants KCBD relief as to claims added after the summary judgment motion was filed. *See Lehmann*, 39 S.W.3d at 204 (summary judgment is reversible when it fails to address claims timely added by amendment after the motion was filed). He asserts KCBD's summary judgment motion was not amended to address his subsequent amended petitions resulting in a judgment on less than the entirety of his case. We disagree. Opaitz's subsequent amended petitions did not add new claims—they provided additional facts alleging the negligence standard as an alternative element to his defamation claims. Under the facts of this case, KCBD's motion for summary judgment was sufficient to address subsequent pleadings. *See Smith v. Heard*, 980 S.W.2d 693, 697 (Tex. App.—San Antonio 1998, pet. denied) ("Courts have granted summary judgments on causes of action not specifically addressed in a movant's motion if the movant has conclusively disproven an ultimate fact which is central to all causes of action alleged, or the

5

unaddressed causes of action are derivative of the addressed cause of action."). Sub-point eight is overruled.

PUBLIC OFFICIAL STATUS

By his third and fourth sub-points, Opaitz challenges the trial court's determination that he was a public official. He asserts the allegations against him were made in a non-public investigation, did not result in an arrest or criminal charges being filed, and his alleged off-duty conduct did not arise out of the performance of his duties as a police officer and could not be a matter of public concern. Again, we disagree.

Public official status is a question of law for the court. *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2014). In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court established a rule prohibiting a public official from recovering damages for a defamatory statement relating to his official conduct unless he could prove the statement was made with actual malice. *Rogers v. Cassidy*, 946 S.W.2d 439, 444-45 (Tex. App.—Corpus Christi 1997), *disapproved on other grounds*, *Huckabee v. Time Warner Entertainment Co., L.P.*, 19 S.W.3d 413, 423 (Tex. 2000). Several years after *Sullivan*, the Supreme Court established a minimum test requirement for determining public official status: "The 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). A public official's position "must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and

6

discussion occasioned by the particular charges in controversy." *Id.* at 86 n.13. While not every public employee is a public official, the rule is not limited to the upper echelons of government. *Villareal v. Harte-Hanks Communications, Inc.*, 787 S.W.2d 131, 134 (Tex. App.—Corpus Christi 1990, writ denied). "[A]nything which might touch on an official's fitness for office is relevant." *Id.* (citing *Garrison v. Louisiana*, 379 U.S. 64, 76-77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)).

Police officers and other law enforcement officials are almost always held to be public officials. *See Pardo v. Simons*, 148 S.W.3d 181, 189 (Tex. App.—Waco 2004, no pet.) (police officer) (citing *Hailey v. KTBS, Inc.*, 935 S.W.2d 857, 859-61 (Tex. App.—Texarkana 1996, no writ) (deputy sheriff)); *Times-Mirror Co. v. Harden*, 628 S.W.2d 859, 860 (Tex. App.—Eastland 1982, writ ref'd n.r.e.) (Texas Department of Public Safety undercover narcotics agent); *Times Herald Printing Co. v. Bessent*, 601 S.W.2d 487, 489 (Tex. Civ. App.—Beaumont 1980, writ dism'd w.o.j.) (Texas Department of Public Safety officer); *McKinley v. Baden*, 777 F.2d 1017, 1021 (5th Cir. La. 1985) (police officer). The public perceives a police officer as an authority figure entrusted in upholding the law and possesses a legitimate interest in information related to his ability to follow the law and perform his duty to protect the public. *See Morales v. Ellen*, 840 S.W.2d 519, 525 (Tex. App.—El Paso 1992, writ denied). *See also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971) (holding that a charge of criminal conduct, no matter how remote in time or place, can never be irrelevant to an official's fitness for office for purposes of the *New York Times* rule of "knowing falsehood or reckless disregard"). A criminal accusation against a police

officer might touch on that officer's fitness for the position.[3] *See Foster v. Laredo Newspapers*, 541 S.W.2d 809, 814-15 & n.7 (Tex. 1976) (noting that anything that might touch on an official's fitness for office is relevant). Because of the public trust placed in Opaitz as a police officer, his fitness for that position is one which would invite public scrutiny and discussion, distinct and apart from the scrutiny and discussion occasioned by the particular conduct discussed. Accordingly, we conclude the trial court did not err in holding Opaitz was a public official as a matter of law. Sub-points three and four are overruled.

MERITS CHALLENGE TO SUMMARY JUDGMENT
STANDARD OF REVIEW—NO-EVIDENCE MOTION

Having determined that the trial court did not err in concluding that Opaitz was a public official for purposes of determining the appropriate burden of proof on his defamation claim, we turn our attention to the merits of his challenge concerning the propriety of the trial court's summary judgment order. A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict, and we apply the same legal sufficiency standard as we apply in reviewing a directed verdict. *See King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). In a no-evidence summary judgment motion, the movant contends there is no evidence of one or more essential elements of the claims for which the nonmovant would bear the burden of proof at trial. TEX. R. CIV. P. 166a(i). *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). Once the motion is filed, the burden shifts to the nonmovant to present evidence

---

[3] Opaitz retired on January 29, 2010, before the May 27, 2010 article was published. However, his retirement was not so far removed from his position as a police officer to render the article no longer of public interest. *See Rosenblatt*, 383 U.S. at 87 n.14.

8

raising an issue of material fact as to the elements of its cause of action. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See Hamilton*, 249 S.W.3d at 426. The nonmoving party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i), Notes and Comments (1997); *Hamilton*, 249 S.W.3d at 426.

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A no-evidence challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch*, 118 S.W.3d at 751.

When a no-evidence and traditional motion for summary judgment are filed which assert the plaintiff has no evidence of an element of its claim and alternatively, that the movant has conclusively negated that same element, we address the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In other words, we first review the trial court's summary judgment under the standards of Rule 166a(i) of the Texas Rules of Civil Procedure, and if the nonmovant fails to produce more than a scintilla of evidence, there is no need to analyze the summary judgment under the standards of Rule 166a(c). *Id.*

Defamation claims are divided into two categories—defamation *per se* and defamation *per quod*—according to the level of proof required to make them actionable. *KTRK TV, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In defamation *per se* cases, damages are presumed to flow from the nature of the defamation itself and specific proof of harm is not generally required. *Id.* at 689-90*.* Defamation *per quod* is actionable only upon allegation and proof of damages. *Id.* at 689. Libel, defamation expressed in written form, "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011).

To maintain a claim for defamation, a plaintiff must prove a defendant (1) published a statement (2) that defamed the plaintiff (3) while either acting with actual malice if he is a public figure or public official, or negligence if he is a private individual, regarding the truth of the statement. *Neely*, 418 S.W.3d at 61 (citing *WFAA-TV v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). The burden to prove actual malice lies with the complainant and it is his obligation to satisfy that burden by clear and convincing evidence. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 116 (Tex. 2000); *Darby v. New York Times*, No. 07-12-00193-CV, 2014 Tex. App. LEXIS 2197, at *17 (Tex. App.—Amarillo, Feb. 26, 2014, pet. filed) (mem. op.). Therefore, because we have concluded that Opaitz was a public figure, KCBD would be entitled to summary judgment unless Opaitz presented more than a scintilla of evidence to raise a material fact issue that KCBD published the prosecution statement with actual malice. In other

words, in order to defeat a no-evidence summary judgment on his defamation claim, Opaitz was required to present at least a scintilla of evidence that KCBD acted with actual malice when it published the article that allegedly defamed him.

Actual malice in a defamation case is a term of art. *Pardo*, 148 S.W.3d at 186. Unlike common-law malice, it does not include ill-will, spite or evil motive. *Huckabee*, 19 S.W.3d at 420) (citing *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989)). To establish actual malice, a plaintiff must prove the defendant made a statement with "knowledge of, *or* reckless disregard for, the falsity." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 158 (Tex. 2014) (emphasis in original); *Freedom Newspapers v. Cantu*, 168 S.W.3d 847, 853 (Tex. 2005).

Knowledge of falsity is a relatively clear standard. *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005) (*per curiam*). Reckless disregard is a subjective standard and requires evidence that the defendant entertained serious doubts as to the truth of the article at the time of its publication. *Id.*

Proving actual malice carries a high burden for a plaintiff. "A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002). An understandable misinterpretation of ambiguous facts does not show actual malice, but improbable assertions and statements made on information that is obviously dubious may show actual malice. *Id.* at 596. "A lack of care or an injurious motive in making a statement is not alone proof of actual malice, but care and motive are factors to be considered." *Id.* Publication of defamatory material in order to increase profits in the form of a paid advertisement is

11

insufficient to prove actual malice. *New York Times Co.*, 376 U.S. at 265-66. A media defendant's motive in publishing a story cannot provide a sufficient basis for finding actual malice. *Harte-Hanks Communications*, *Inc. v. Connaughton*, 491 U.S. 657, 665, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

In reviewing the prosecution statement for defamatory content, we begin with the first sentence which provides "[t]he Lubbock police officer who was investigated last year by Texas Rangers has retired." According to the summary judgment evidence, regardless of whether the investigation was for internal affairs or otherwise, it is true that the Texas Rangers were involved with the investigation and that Opaitz retired.

The next sentence provides that Opaitz was "accused of sexual assault" and the Texas Rangers "took witness statements." According to the first two pages of a lengthy report from the Texas Rangers provided to KCBD under the Public Information Act,[4] and made a part of KCBD's summary judgment evidence, two females were interviewed by Texas Rangers after making allegations that a Lubbock police officer had sexually assaulted them. The evidence supports this portion of the May 27, 2010 article.

Next, the article reports that Opaitz had been on paid administrative leave commencing on "May 5th 2009" and that he retired on January 29, 2010. Documents in the record show Opaitz was actually placed on paid administrative leave on March 5, 2009, and that he retired on January 29, 2010. Therefore, the article inaccurately provides May 5, 2009, instead of March 5 as the date Opaitz was placed on leave. Such minor inaccuracies do not amount to falsity so long as "the substance, the gist, the

---

[4] TEX. GOV'T CODE ANN. § 552.001-.353 (West 2012 and Supp. 2014).

sting, of the libelous charge be justified." *Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

The final sentence of the article which Opaitz challenges as defamatory provides "[t]he local office of District Attorney handed off the Texas Rangers case to the Texas Attorney General's Office to act as a special prosecutor." By his affidavit, Opaitz averred that because "no case was ever filed, no case could ever have been referred to the Attorney General's Office." He asserted KCBD's article omitted that he retired in good standing, there was never an offense report and he was never arrested. His affidavit provided as follows:

> Just based on the fact that [Lubbock Police Department] and the Texas Rangers never arrested me, KCBD should have known the allegations were groundless. That un-contradicted fact alone was enough for KCBD to know the falsity of what it was representing.

In his deposition testimony, Clark testified that page two of the Texas Rangers Report designated the investigation as "criminal" which caused him to believe a crime was being investigated. He also testified the information he had at the time of the May 27, 2010 article was that the Texas Attorney General was the special prosecutor. Clark also denied ever knowing or learning that the report belonged to an internal affairs investigation.

Opaitz offered conclusory statements unsupported by facts that KCBD published the article in question with knowledge of its falsity or reckless disregard for its truth. He has not provided more than a scintilla of evidence to establish that KCBD acted with actual malice in publishing the prosecution statement. Without more than a scintilla of evidence of actual malice, Opaitz cannot prevail in his defamation claims against KCBD.

13

*Hearst Corp.*, 159 S.W.3d at 637. Moreover, the "gist" of the article is substantially true. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990). Opaitz's global challenge to the trial court's summary judgment is overruled and consideration of his remaining sub-points is pretermitted. We conclude the trial court did not err in granting KCBD's no-evidence motion for summary judgment.

CONCLUSION

The trial court's summary judgment is affirmed.


Patrick A. Pirtle
Justice