# NO. 12-19-00212-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MEDIAONE, L.L.C. D/B/A THE MONITOR AND AIM MEDIA TEXAS OPERATING, L.L.C. D/B/A THE MONITOR,* | *§* | *APPEAL FROM THE 3RD* |
| *APPELLANTS* | *§* | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *RODNEY ALLAN HENDERSON, APPELLEE* | *§* | *HENDERSON COUNTY, TEXAS* |

## *OPINION*

MediaOne, L.L.C. d/b/a The Monitor (The Monitor) appeals the denial of its motion to dismiss a lawsuit that Rodney Allan Henderson (Henderson) filed against it. In three issues it contends the Texas Citizens Participation Act (TCPA) applies, the Defamation Mitigation Act (DMA) requires dismissal, and Henderson failed to meet his burden to establish a prima facie case on each element of his claims. We affirm in part, reverse and render in part, and reverse and remand in part.

## BACKGROUND

In its February 4, 2018 edition (originally distributed and available online Friday, February 2), The Monitor published a news story with the headline "Deputies arrest major meth dealers." The article detailed the separate arrests of Michael Brandon Moore and Rodney Wayne Henderson, each of whom was charged with manufacturing and delivering a controlled substance. Included in the article were mugshots labeled "Michael Brandon Moore" and "Rodney Henderson." However, the photograph of Rodney Henderson was actually a photograph of Rodney Allan Henderson, the former police chief of Star Harbor who had been arrested in 2016 and charged with

assault. Those charges were later dismissed, but Henderson's mugshot was still on file with The Monitor.

On February 2, Henderson's criminal defense attorney called The Monitor and alerted the newspaper that the wrong Henderson's photograph had been included in the article. Later that day, The Monitor published a retraction and correction on its website and Facebook page. It published the photograph of Rodney Wayne Henderson that had been provided by the Henderson County Sheriff's Office. The correction stated that "the wrong mug shot was published due to both men having the same first and last name." It further stated, "The Monitor regrets the error and extends its sincere apology to former Star Harbor Police Chief Rodney Henderson and any other affected by this error. A correction will appear in the Thursday, Feb. 8 issue of The Monitor." The article in the February 8th issue was on the front page of the newspaper and was consistent with the February 2nd correction and retraction.

Henderson filed suit against The Monitor for defamation. In his petition, he alleges that the original article is defamatory because publishing his photograph along with the article regarding drug dealers falsely accused him of a crime. He further contends that the correction articles are defamatory because they left readers with the wrong impression that Henderson has a pending criminal charge or has been convicted of a crime. The Monitor filed a motion to dismiss under the TCPA, alleging the Texas anti-SLAPP[1] statute applies to its articles and that Henderson's suit is in response to the exercise of its right of free speech. Following a hearing, the trial court failed to rule on the motion, and it was overruled by operation of law.[2] This appeal followed.[3]

---

[1] The TCPA is considered an anti-SLAPP statute. Anti-SLAPP stands for "strategic lawsuit against public participation." *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 521 n.1 (Tex. App.—Fort Worth 2012, pet. denied).

[2] TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a) (West 2015); *Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 69-70 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (if a court does not rule on the motion to dismiss under Section 27.003 within the time prescribed under Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal).

[3] An interlocutory appeal of a motion to dismiss under Section 27.003 is authorized by the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West Supp. 2016).

In its first issue, The Monitor asserts the TCPA applies to Henderson's suit. In its second issue, it contends Henderson's failure to comply with the DMA requires dismissal. And in its third issue, The Monitor urges Henderson failed to establish a prima facie case of defamation.

## TEXAS CITIZENS PARTICIPATION ACT[4]

The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2015). Although we construe the TCPA liberally "to effectuate its purpose and intent fully," it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case or common law or rule provisions." *Id*. § 27.011 (West 2015).

The TCPA provides a mechanism for early dismissal of a cause of action that "is based on, relates to, or is in response to a party's exercise of the right of free speech, the right to petition, or right of association ...." *Id*. § 27.003 (West 2015). The party moving for dismissal has the initial burden to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" the right of free speech, the right to petition, or the right of association. *Id*. § 27.005(b) (West 2015). If the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006(a) (West 2015).

The Texas Supreme Court has explained the meaning of the requirement that the nonmovant establish by "clear and specific evidence a prima facie case." *In re Lipsky*, 460 S.W.3d 579, 590–91 (Tex. 2015) (orig. proceeding). "Clear" means "unambiguous, sure or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Id*. at 590. A "prima

---

[4] On September 1, 2019, substantial revisions to the TCPA became effective. *See* Act of May 17, 2019, 86th Leg., R.S., H.B. 2730, §§ 1–9, 12 (to be codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). These amendments are irrelevant here because they apply "only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose." *See id*. § 11.

facie case" is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (citing *In re E.I. Du Pont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* (citing *Simonds v. Stanolind Oil & Gas Co.*, 136 S.W.2d 207, 209 (Tex. 1940)). The "clear and specific evidence" requirement does not impose an elevated evidentiary standard, nor does it categorically reject circumstantial evidence. *Id.* at 591. But it requires more than mere notice pleading. *Id.* at 590–91. Instead, a plaintiff must provide enough detail to show the factual basis for its claim. *Id.* at 590.

We review questions of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered by the TCPA. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.–Austin 2015, no pet.). We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged claims. *Id.* We consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.–Dallas 2015, no pet.). We view the pleadings and evidence in the light most favorable to the nonmovant. *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214–15 (Tex. App.–Houston [14th Dist.] 2014, no pet.).

## APPLICABILITY OF THE TCPA

In issue one, The Monitor contends that Henderson's lawsuit is based on, relates to, and is in response to its exercise of the right to free speech. Specifically, it urges that the publications at issue are communications made in connection with a matter of public concern. In response, Henderson argues that defamatory statements are not considered protected free speech and should be exempt from TCPA protections.

The TCPA defines "exercise of the right of free speech" as a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4) (West 2015). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). A "communication" is

4

defined to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1); *see* TEX. GOV'T CODE ANN. § 311.005(13) (West 2013) ("Includes" and "including" generally "are terms of enlargement and not of limitation or exclusive enumeration[]"). The TCPA does not discriminate between public and private communications as long as they are made in connection with a matter of public concern. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curium).

Applying the plain language of the TCPA, The Monitor's publications fall under the statutory definition of "communication." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1). Furthermore, the publications were in connection with a matter of public concern because they were reporting alleged criminal activity in the community. While the TCPA does not define community well-being, Texas courts have held that statements regarding misconduct or crime are statements regarding community well-being. *See Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.). In response to Henderson's argument, we note that the Texas Supreme Court has explicitly held that the TCPA applies to defamation claims. *See Adams v. Starside Custom Builders, L.L.C.*, 547 S.W.3d 890, 897 (Tex. 2018).

Henderson asserted causes of action for defamation alleging that each of The Monitor's articles regarding Rodney Wayne Henderson were defamatory against him. For the reasons discussed above, each of these actions are based on, relate to, or are in response to The Monitor's exercise of its right of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). Because the TCPA applies, we sustain The Monitor's first issue.

## PRIMA FACIE CASE

Because The Monitor met its burden to show the TCPA applies, we now address issue three, i.e., whether Henderson established by clear and specific evidence a prima facie case for each element of his defamation claims. *See id.*

### Defamation

Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *Lipsky*, 460 S.W.3d at 593. The status of the person allegedly defamed determines the requisite degree of fault. *Id.* A private individual need only prove negligence; however, a public figure or official must prove actual malice. *Id.* "Actual malice" in

5

this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Id.* Finally, the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *Id.* A false statement that charges a person with a crime is defamatory per se. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984).

Henderson alleges all of The Monitor's articles involving him are defamatory. For purposes of our analysis, we will address each publication in turn and will categorize them as "the originals" and "the corrections."

**The Originals**

The original article detailing the arrest of Rodney Wayne Henderson was printed in the physical copy of The Monitor and available on its website. The parties do not dispute that the article included the wrong photograph, which essentially accused Henderson of committing a crime. However, The Monitor urges that Henderson is a public official who must prove actual malice and that he failed to provide clear and specific evidence of fault.

*Public Figure Status*

Henderson served as the police chief for the city of Star Harbor until July 2016. Star Harbor is a small town of approximately 450 people and is included in The Monitor's distribution area. The articles at issue were published in February 2018. Henderson contends that he is not a public official for defamation purposes because the articles were published after he left the police force. We disagree.

Public official status is a question of law for the court. *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2014). The Supreme Court established a minimum test requirement for determining public official status: "The 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 676, 15 L. Ed. 2d 597 (1966). A public official's position "must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id.* 303 U.S. at 86 n.13, 86 S. Ct. 676 n.13. While not every public employee is a public official, the rule is not limited to the upper echelons of government. *Villarreal v. Harte–Hanks Communications, Inc.*, 787 S.W.2d 131, 134 (Tex. App.–Corpus Christi 1990, writ denied).

6

Police officers and other law enforcement officials are almost always held to be public officials. *See Pardo v. Simons,* 148 S.W.3d 181, 189 (Tex. App.–Waco 2004, no pet.) (police officer) (citing *Hailey v. KTBS, Inc.,* 935 S.W.2d 857, 859–61 (Tex. App.–Texarkana 1996, no writ) (deputy sheriff)); *Times–Mirror Co. v. Harden,* 628 S.W.2d 859, 860 (Tex. App.–Eastland 1982, writ ref'd n.r.e.) (Texas Department of Public Safety undercover narcotics agent); *Times Herald Printing Co. v. Bessent,* 601 S.W.2d 487, 489 (Tex. Civ. App.–Beaumont 1980, writ dism'd w.o.j.) (Texas Department of Public Safety officer); *McKinley v. Baden,* 777 F.2d 1017, 1021 (5th Cir. 1985) (police officer). The public perceives a police officer as an authority figure entrusted in upholding the law and possesses a legitimate interest in information related to his ability to follow the law and perform his duty to protect the public. *See Morales v. Ellen,* 840 S.W.2d 519, 525 (Tex. App.–El Paso 1992, writ denied); *see also Monitor Patriot Co. v. Roy,* 401 U.S. 265, 277, 91 S. Ct. 621, 628, 28 L.Ed.2d 35 (1971) (holding that a charge of criminal conduct, no matter how remote in time or place, can never be irrelevant to an official's fitness for office for purposes of the *New York Times* rule of "knowing falsehood or reckless disregard").

The Supreme Court of the United States has not yet decided "whether or when an individual who was once a public figure may lose that status by the passage of time." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 166 n.7, 99 S. Ct. 2701, 2706 n.7, 61 L. Ed. 2d 450 (1979). However, both the United States Supreme Court and the Fifth Circuit Court of Appeals have suggested that "there may be cases where a person is so far removed from a former position of authority that comment on the manner in which he performed his responsibilities no longer has the interest necessary to justify the *New York Times* rule." *Rosenblatt*, 383 U.S. at 87 n.14, 86 S. Ct. at 676 n.14; *see Belli v. Orlando Daily Newspapers*, 389 F.2d 579, 588 (5th Cir. 1967).

In *Zerangue v. TSP Newspapers, Inc.*, the Fifth Circuit considered and rejected the plaintiffs' contention "that the passage of nearly six years between their discharge [from public office] and the publication of the two [allegedly defamatory] articles had returned them to private figure status." 814 F.2d 1066, 1069 (5th Cir. 1987). The Fifth Circuit noted that the plaintiffs "cite[d] no cases holding that public official status erodes with the passage of time." *Id.* Indeed, the Fifth Circuit recognized that other jurisdictions have held that "ex-public officials must prove that 'actual malice' prompted speech concerning their in-office activities." *See id.*; *cf. Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 435–36 (5th Cir. 1987) (concluding that once an

7

individual becomes a public figure, he "cannot erase his public-figure status by limiting public comment and maintaining a low public profile").

We agree with this reasoning and hold that based on the specific facts of this case, Henderson, as a former public official, was a public figure with respect to the publication of The Monitor's original article because less than two years had passed between his resignation and the defamatory statements. In addition, the statements relate to his fitness as a police officer and police chief and Henderson contends that he was actively seeking employment as a law enforcement official when the articles were published. *See Foster v. Laredo Newspapers*, 541 S.W.2d 809, 814-15 & n.7 (Tex. 1976) (noting that anything that might touch on an official's fitness for office is relevant); *Opaitz v. Gannaway Web Holdings, LLC*, 454 S.W.3d 61, 66 (Tex. App.—Amarillo 2014, pet. denied) (a criminal accusation against a police officer might touch on that officer's fitness for the position).

### Actual Malice

To establish actual malice, a plaintiff must show a defamatory statement was published with either knowledge of its falsity or reckless disregard for its truth. *Lipsky*, 460 S.W.3d at 593. Reckless disregard is a subjective standard, focusing on the defendant's state of mind. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002)). Mere negligence is not enough. *Id*. "Rather, the plaintiff must establish 'that the defendant in fact entertained serious doubts as to the truth of his publication,' or had a 'high degree of awareness of ... [the] probable falsity' of the published information." *Id*. (quoting *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 2696, 105 L. Ed. 2d 562 (1989)). The evidence must be viewed in its entirety. *Campbell*, 471 S.W.3d at 629. Further, "[a] defendant's state of mind 'can—indeed, must usually—be proved by circumstantial evidence.'" *Id*. (quoting *Bentley*, 94 S.W.3d at 591). Specifically, the supreme court stated the following:

> A lack of care or an injurious motive in making a statement is not alone proof of actual malice, but care and motive are factors to be considered. An understandable misinterpretation of ambiguous facts does not show actual malice, but inherently improbable assertions and statements made on information that is obviously dubious may show actual malice. A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is.

8

*Id.* (quoting ***Bentley***, 94 S.W.3d at 597). In addition, the supreme court stressed that proof of actual malice is not defeated by a defendant's self-serving protestation of sincerity. *Id.*

In this case, to support his position that the record contains clear and specific evidence of actual malice, Henderson points to evidence that the employee of The Monitor, Pearl Cantrell, who admittedly published the incorrect photo, had been a friend of his, and received a press release from the Sheriff's Office containing the correct photograph. The Monitor contends there is no evidence it or Cantrell had the correct photograph at the time of the original publication.

In response to The Monitor's motion to dismiss, Henderson provided several pieces of evidence. In Henderson's affidavit, he testified that he was friends with Cantrell who admitted she published his mugshot with the article. Cantrell sent Henderson the following messages on Facebook:

> Attached is a file for our next publication. I'm so sorry, I posted your picture instead of the right Rodney Henderson. To further correct this situation, I have deleted ALL photos of you from our electronic photo file. Again I am so sorry. Please forgive me this terrible blunder.
>
> Would you be satisfied if I left the newspaper in public disgrace after serving this community for more than 12 years? If that will serve, that I can do. Bankrupting the newspaper hurts everyone.
>
> I want to make this right by you. Its extremely important to me.

Henderson further testified in his affidavit that he and Cantrell "knew each other well enough that she should have been able to identify [him] from a photograph such as the one" used in the article. Henderson also provided a copy of the press release that was sent to local media outlets by the Henderson County Sheriff's Office.[5] The Monitor argues that there is no evidence it actually received the press release and corresponding photographs. However, the language of the article closely resembles, and at times mirrors, the language of the press release. In addition, the article expressly states that it relied upon the press release ("[the sheriff] stated in a press release"). Before us we have prima facie evidence that Cantrell received the press release regarding criminal activity in the community with the correct photograph from the Sheriff's Office but instead published an incorrect photograph. *See **Lipsky***, 460 S.W.3d at 590, 593, 596. Viewing

---

[5] While The Monitor urges that Henderson cannot prove the article's author actually received the email, we will not exclude it at this early stage of the litigation. Henderson has not had the opportunity to conduct discovery and propound requests for production and the actual email would be in The Monitor's custody. *See **Tu Nguyen v. Duy Tu Hoang***, 318 F. Supp. 3d 983, 997-98 (S.D. Tex. 2018).

the evidence in its entirety, we conclude Henderson provided clear and specific evidence that supports a prima facie case of actual malice as to the portion of his defamation claim based upon the original publication. *See id.* The trial court did not err in overruling the motion to dismiss with regard to Henderson's defamation claims on the original publication. We overrule this portion of The Monitor's third issue.

## The Corrections

Henderson's petition alleges the corrections published by The Monitor in both the print edition and on its Facebook page are defamatory. Specifically, he contends that the corrections "left readers with the false impression that Henderson has a pending criminal charge or has been convicted of a crime (and also that Henderson's arrest was somehow related to the originally-published story. . .)."

A publication is not substantially true if, taken as a whole, it is more damaging to the plaintiff's reputation than a truthful publication would have been. *See Neely*, 418 S.W.3d at 63. "A publication's meaning is determined 'by construing the publication or broadcast ["]as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.["]'" *Rodriguez v. Gonzales*, 566 S.W.3d 844, 851 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016)). In other words, we determine falsity by first ascertaining the "gist" of the publication. *See Neely*, 418 S.W.3d at 63–64. The supreme court recently affirmed that "it does not matter whether the gist of the article is analyzed before or after the individual statements, as long as it is assessed independently." *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 763 (Tex. 2019).

The Facebook correction stated as follows:

> The front page of the Sunday, Feb. 4 issue of The Monitor contains a story of a drug arrest in Henderson County. Unfortunately, the wrong mug shot was published due to both men having the same first and last name. The correct mug shot appears below. The Monitor regrets the error and extends its sincere apology to former Star Harbor Police Chief Rodney Henderson and any others affected by this error. A correction will appear in the Thursday, Feb. 8 issue of The Monitor.

The printed correction appeared on the front page of the February 8th issue and was virtually identical to the online correction.

10

Reading the correction as an ordinary reader, the corrections do not suggest that Henderson is facing any pending criminal charges or that he has been convicted of a crime. The mere fact that the newspaper had a mugshot on file does not convey a conclusion that the person in the photograph was ultimately convicted. The corrections make it clear that Rodney Wayne Henderson was arrested on narcotics charges and that Rodney Allan Henderson was not. The gist of the article does not convey a false, defamatory implication against Henderson. Therefore, Henderson failed to present a prima facie case of defamation regarding the corrections. The trial court erred when it refused to dismiss Henderson's defamation claims as to the corrections. Accordingly, we sustain this portion of The Monitor's third issue.

## Conclusion

Having determined that Henderson presented a prima facie case of defamation regarding the original publications, we overrule The Monitor's third issue as to those claims. Because we further hold that Henderson failed to present a prima facie case of defamation as to the corrections, we sustain The Monitor's third issue as to those claims.

## DEFAMATION MITIGATION ACT

In its second issue, The Monitor alleges that Henderson's action must be dismissed because Henderson failed to comply with the DMA.

The DMA was enacted by the Texas Legislature in 2013 to "provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." TEX. CIV. PRAC. & REM. CODE ANN. § 73.052 (West 2017). The DMA applies to "a claim for relief, however characterized, for damages arising out of harm to personal reputation caused by the false content of a publication" and to "all publications, including writings, broadcasts, oral communications, electronic transmissions, or other forms of transmitting information." *Id*. § 73.054 (West 2017).

Under the DMA, a person may maintain an action for defamation only if: "(1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction." *Id*. § 73.055(a) (West 2017). A request for correction, clarification, or retraction is timely if made during the period of limitations applicable to a claim for defamation. *Id*. § 73.055(b). A person who does not request a correction, clarification, or retraction within ninety days after receiving knowledge of a

11

publication may not recover exemplary damages. *Id*. § 73.055(c). If a correction, clarification, or retraction is made in accordance with the DMA, regardless of whether the person claiming harm made a request, a person may not recover exemplary damages unless the publication was made with actual malice. *Id*. § 73.059 (West 2017).

The Monitor urges that Henderson's failure to comply with the DMA requires dismissal. Henderson, on the other hand, contends that the proper remedy for any alleged failure to comply with the DMA only impacts his ability to recover exemplary damages. Therefore, Henderson urges, even if he failed to comply with the DMA, his case is not subject to dismissal.

There is a split of authority in Texas intermediate appellate courts as to whether failure to make a timely and sufficient retraction request pre-suit is a bar to litigation or merely a preclusion of recovery of exemplary damages. The Texas Courts of Appeals in Dallas, Austin, Amarillo, and Houston's Fourteenth District have interpreted the provisions of the DMA as meaning that the consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damages. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 812 (Tex. App.—Austin 2017, pet. granted) ("We agree that ... the consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damages."); *Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO*, 536 S.W.3d 38, 47 (Tex. App.—Dallas 2017, pet. denied) ("If a plaintiff's claim were subject to dismissal solely due to her failure to request a correction, clarification, or retraction of the statement, a defendant would have no need to ever challenge whether a request was timely."); *Cummins v. Lollar*, No. 07-16-00337-CV, 2018 WL 2074636, at *8 (Tex. App.—Amarillo May 3, 2018, pet. denied) ("The only consequence for failing to make a request for retraction within ninety days is preclusion of recovery of exemplary damages, not dismissal."); *Cunningham v. Waymire*, No. 14-17-00883-CV, 2019 WL 5382597, at *17 (Tex. App.—Houston [14th Dist.] Oct. 22, 2019, no pet. h.). The First District in Houston disagrees and has held that the proper remedy is dismissal. *Zoanni v. Hogan*, 555 S.W.3d 321, 328 (Tex. App.—Houston [1st Dist.] 2018, pet. filed) ("The DMA is clear that one may maintain an action *only if* he sends a timely and sufficient request for correction, clarification, or retraction. [DMA] § 73.055. Once the deadline has passed, a plaintiff cannot maintain an action.") (emphasis in original).

However, at this juncture, we need not opine on the proper remedy for failure to comply. First, with regard to the original publications, The Monitor issued a correction after the error was brought to its attention. Therefore, the DMA has been complied with as to the originals. *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 73.055(a). Secondly, as previously discussed, Henderson failed to present a prima facie case of defamation regarding the corrections; accordingly, we need not address compliance with the DMA as to that claim. For these reasons, we overrule issue two.

## DISPOSITION

We have sustained The Monitor's first issue and portions of its third issue, and we have overruled The Monitor's second issue. Accordingly, we *reverse* the denial, by operation of law, of The Monitor's motion to dismiss Henderson's defamation claims regarding the corrections, and we *render* judgment *dismissing* those claims. The remaining portion of the trial court's order is *affirmed*. We *remand* the case for a determination of attorney's fees to be awarded to The Monitor in accordance with the TCPA[6] and for further proceedings consistent with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 4, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[6] The TCPA requires the trial court to award costs, reasonable attorney's fees, and other expenses to a movant upon dismissal of a legal action under the Act. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1) (West 2015). When the appellate court holds that the plaintiff failed to discharge his burden to prove a prima facie case under the TCPA as to some of his causes of action, but that he successfully met his burden on other causes of action, it must remand the case to the trial court for a determination of the proper amount of fees, costs, and expenses to award the movant. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441–42 (Tex. 2017); *Serafine v. Blunt*, 466 S.W.3d 352, 364 (Tex. App.—Austin 2015, no pet.).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 4, 2019**

**NO. 12-19-00212-CV**

**MEDIAONE, LLC D/B/A THE MONITOR AND AIM MEDIA TEXAS OPERATING, LLC D/B/A THE MONITOR,**
Appellant
V.
**RODNEY ALLAN HENDERSON,**
Appellee

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. CV19-0029-3)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the denial, by operation of law, of The Monitor's motion to dismiss Henderson's defamation claim regarding the corrections be **reversed**, and judgment **rendered dismissing** that claim. The remaining portion of the trial court's order is **affirmed**. It is further ORDERED, ADJUDGED and DECREED that the case be **remanded** for a determination of attorney's fees to be awarded to The Monitor and for **further proceedings** consistent with this opinion, and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*